Argued March 26, reversed April 14, 1914.

## LEONARD *v.* WALKER.

(140 Pac. 755.)

**Partition—Suits—Mode of Actual Partition—Statutory Provisions.**

1. Under Section 443, L. O. L., providing that in making partition, the referees shall divide the property and allot the portions to the respective parties, quality and quantity considered, and Section 444, authorizing the court to confirm or set aside the report in whole or in part, it is the duty of the referees to apportion the land in value according to the respective interests, without regard to the acreage, and, when this is not done, the report should be set aside.

[As to partition of property of decedents, see note in 41 Am. St. Rep. 140; 119 Am. St. Rep. 586.]

**Partition—Suits—Mode of Actual Partition—Equality of Value.**

2. In a suit for partition, a decree giving to the parties acreage substantially in proportion to their respective shares, but giving to parties who are entitled to one fifth each, respectively, land worth $3,125, $3,425, $2,958.40, and to a party entitled to two fifths land worth $3,884.50, is reversible error.

[As to allowance for improvements in partition, see notes in 62 Am. Dec. 484; 81 Am. St. Rep. 185.]

From Multnomah: HENRY E. McGINN, Judge.

Department 2. Statement by MR. JUSTICE EAKIN.

This is a suit by America Ann Catherine Leonard and Melinda K. Walker against James P. Walker, Andrew Leonard, Anna Rebecca Gillihan, Edwin Gillihan, her husband, John P. Leonard and Frances Leonard, his wife, to partition the real estate of John Leonard, deceased, consisting of many tracts of low

land adjacent to lakes and the Willamette slough in Multnomah County, Oregon, between the following named heirs and the widow: The widow is entitled to a life interest in half the real estate, Melinda K. Walker to one fifth of the remaining real estate, Anna Gillihan, one fifth, Andrew Leonard, one fifth, and John P. Leonard, one fifth in his own right, and also the one fifth interest of Geo. W. Leonard. The court ad· judged the interests of each of the heirs as above mentioned, and appointed viewers to partition the land between the tenants in common, namely, Alex Bonser, P. A. Frakes and G. A. Taylor, who made partition and reported the same to the court, from the decree of the court confirming which John P. Leonard and Frances Leonard, his wife, appeal.

REVERSED AND REMANDED.

For appellants there was a brief and an oral argument by *Mr. Frank Schlegel.*

For respondents there was a brief over the name of *Messrs. Joseph & Haney,* with an oral argument by *Mr. Bert E. Haney.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. No question is made as to the portion allotted to the widow, and we have only to do with the effect of the partition by the referees among the four children. Section 443, L. O. L., provides:

"In making the partition, the referees shall divide the property, and allot the several portions thereof to the respective parties, quality and quantity relatively considered. * * "

Section 444 provides: "The court may confirm or set aside the report in whole or in part, and if necessary

appoint new referees''—that is, the allotment must be
of the several portions to the respective parties, qual-
ity and quantity relatively considered, and to each
equal values according to their respective shares. If
not so done, the court may not confirm the report, but
may set it aside. It is said to be a fundamental rule
in partition that the owners in common shall become
owners in severalty in exact proportion in value to
their respective interests rather than with regard to
the equality of area; and, where the equities require it,
the parties are entitled to have the actual value ascer-
tained: 21 Am. & Eng. Ency. Law (2 ed.), 1164. It
is held that it is not necessary that the referees shall
make a division in exact equality as to quantity, but
they must so make the division that each party will
receive his proportionate share in value: 15 Ency. Pl.
& Pr. 816; *Stannard* v. *Sperry,* 56 Conn. 541 (16 Atl.
261). It is rarely possible to allot to each an equal
area in such a case; the ultimate duty of the viewers
being to make partition proportionately, quality and
quantity considered, as nearly equal in value as prac-
tical, and, if necessary, require compensation by any
party receiving an allotment the value of which is in
excess of his share, payable to the party who is receiv-
ing an allotment less in value than his share. The
interest may be thus equalized when it is impossible so
to do otherwise: 30 Cyc. 261. The law contemplates
that each shall receive the full value of his share as
determined by the decree appointing the viewers.

2. In this case the referees made little effort to
determine values. At the time of giving their evidence
on this trial they ventured some opinion as to values,
but nothing definite. Frakes said that he did not think
he could make any fairer distribution; that he did
his duty as far as he knew how. Their report filed
with the court makes no reference to value, but as-

signs certain acreage to each of the claimants.   In giving their testimony Frakes and Taylor seem to acquiesce in Bonser's valuation as given in the trial. The effort seems to have been to apportion the acreage, namely, J. P. Leonard was given 134.86 acres, Mrs. Walker, 63 acres, Mrs. Gillihan 67 acres, and Andrew Leonard 83.4 acres.   There were practically three classes of land involved.   The land east of Willamette slough about the lakes is variously valued by witnesses from $35 to $90 per acre, some of it being put as low as $10 to $25 per acre.   That west of the slough in the Jackson donation land claim, and that in section 36, is valued from $75 to $150 per acre; apparently all being classed as land of the same value.   The 40 acres on the hill, in section 33, township 3 north, range 2 west, were estimated at from $17.50 to $25 per acre.   The witnesses differ widely as to these values, so that we cannot determine which is right, nor is it our province to so decide.   Their testimony as to the classification does not vary so much.   The statute requires the referees to make a report of their proceedings, specifying therein the manner of executing the trust, which was not done in this case.   Taking witness Paquet's valuation as a fair standard by which to compare the allotments—and it seems to be very impartial—we have: Melinda Walker, 40 acres, in section 32, at $35 an acre, 23 acres, in section 36, at $75, making a total of $3,125; Mrs. Gillihan, 40 acres, in section 32, $35 an acre, and 27 acres in section 36, at $75, totaling $3,425; Andrew Leonard 22.66 acres, in sections 28 and 33, at $15 per acre, 38.74 acres in section 32, at $25, and 22 acres, in section 36, at $75, making a total of $2,958.40; and J. P. Leonard, 40 acres, in section 30, at $15 per acre, 40 acres in said section, at $35, 14.46 acres in the Jackson donation land claim at $75, and 40 acres, in section 33, at $20, with a total of $3,884.50.

Thus J. P. Leonard's allotment is $3,000, less than twice the allotment to either Andrew Leonard or Mrs. Gillihan, the one a little more and the other a little less; and their allotment is from $1,100 to $1,500 in value, more than one half of the J. P. Leonard allotment. This shows the allotment was not made according to the interest of the respective parties, quality and quantity relatively considered as contemplated by the statute. Plaintiffs' estimates, as shown at pages 7 and 8 of their brief, are not a fair valuation according to the values given by the witnesses on page 12 of the brief. The west side land, in section 36, and the Jackson tract are approximately of equal value per acre. The land in section 32 is valued by nearly all the witnesses at from $10 to $25 an acre more than the land in section 30, and the partition has apparently resulted in great prejudice to J. P. Leonard.

It will be well here to call attention to the error in description of the 14.46 acres in the Jackson donation land claim, in which the last course contains an error. It should be 40.01 chains, instead of 4.001 chains. This occurs in the complaint, order of the court, and the supplemental report of the viewers.

Because the referees in making the allotment apparently did not consider the quantity and quality, so that each party, according to his respective right as determined by the court, will receive the value of a share, the decree will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.                    Reversed and Remanded.

Mr. Chief Justice McBride, Mr. Justice Bean and Mr. Justice McNary concur.